IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**JAMES CHRISTIE**                                                                                           **PLAINTIFF**

**V.**                                       **CASE NO. 5:24-CV-5201**

**LAYTON CONSTRUCTION CO., LLC**                                                    **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Presently before the Court are Defendant Layton Construction, Co., LLC's Motion to Dismiss (Doc. 17) under Federal Rule of Civil Procedure 12(b)(6) and Plaintiff James Christie's Motion for Leave to File Amended Complaint (Doc. 26). The Court has reviewed all pertinent briefing and exhibits, as well as the operative Complaint (Doc. 14). Mr. Christie alleges that Layton Construction failed to reasonably accommodate his disability and created a hostile work environment in violation of the Americans with Disabilities Act ("ADA"). The Court held a Case Management Conference on June 30, 2025, received argument on the pending Motions, and ruled from the bench.[1] Because Mr. Christie has failed to state a plausible claim for relief and the proposed amendment would be futile, the Motion to Dismiss (Doc. 17) is **GRANTED**, and the Motion for Leave to Amend (Doc. 26) is **DENIED**. The dismissal is without prejudice, and Mr. Christie has ten (10) days to file a renewed motion for leave to amend.

### I.   ALLEGED FACTS

Mr. Christie has worked in construction for thirty years. (Doc. 14, ¶ 13). Approximately ten years ago, he was diagnosed with narcolepsy. (Doc. 14, ¶ 14). He uses

---

[1] To the extent this written Order differs from the Court's ruling from the bench, this Order controls.

1

a service dog, Zappa, to alert him of narcoleptic episodes. (Doc. 14, ¶ 16). In June 2023, Mr. Christie interviewed for a position with the Vice President of Layton Construction and several managers, and he was hired as a Senior Superintendent. *Id.* at ¶¶ 17, 18, 22. Zappa was present throughout the meeting, and Mr. Christie told those he was interviewing with that he had narcolepsy and used a service dog. *Id.* at ¶¶ 20, 21. Two months later, Mr. Christie started on a construction project in Fort Smith.[2] *Id.* at ¶ 23.

On November 15, 2023, Mr. Christie was at a company dinner where Kevin Charves was present.[3] *Id.* at ¶ 27. At the dinner, Mr. Charves "raised the topic of Zappa at work" and was informed that Zappa was a registered service animal. *Id.* at ¶ 28. The following day, on November 16, 2023, during the course of a performance review, Mr. Charves "advised Plaintiff that having a dog at work was unprofessional and instructed Plaintiff not to bring Zappa to work with him anymore." *Id.* at ¶ 30. That same day, Mr. Charves made a second comment to Mr. Christie that "he could not have Zappa with him in the job trailer." *Id.* at ¶ 31. Over the next month or so, Mr. Christie had "one or two more interactions" with Mr. Charves in which Mr. Christie "felt like what [Mr. Charves] said and/or did was inappropriate and/or based on [Mr. Charves's] dislike of Plaintiff utilizing a Service Dog at work." *Id.* at ¶ 32.

Mr. Christie did not report Mr. Charves's comments or behavior because he thought "one way or another" the report might get back to Mr. Charves and that he "would have

---

[2] According to the Complaint, the project manager in Fort Smith also used a service dog. *Id.* at ¶¶ 24–25.

[3] Mr. Chavres's role at Layton Construction is not clearly alleged, however the parties' briefing clarifies that Mr. Chavres was a supervisor, which can be reasonably inferred from the Complaint.

2

taken action towards getting Plaintiff fired." *Id.* at ¶ 35. Then, on or around January 8, 2024, Mr. Christie resigned from Layton Construction. *Id.* at ¶ 36.

## II.  LEGAL STANDARD

To survive dismissal under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). In ruling, the Court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) (quotation marks omitted).  However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A claim is facially plausible—rather than sheerly possible—when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372 (8th Cir. 2016) (quotation marks and citations omitted).

## III. DISCUSSION

### A.  Disability Discrimination / Failure to Accommodate

#### 1.  *Law*

"The ADA bars private employers from discriminating against a 'qualified individual on the basis of disability.' Discrimination is defined to include 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified [employee] with a disability.'" *Faidley v. United Parcel Serv., Inc.*, 889 F.3d 933, 940 (8th Cir. 2018) (en banc) (quoting 42 U.S.C. § 12112(a), (b)(5)(A)). In failure-to-accommodate

3

cases under the ADA, a plaintiff must ultimately "establish both a prima facie case of discrimination based on disability and a failure to accommodate it." *Hopman v. Union Pac. R.R.*, 68 F.4th 394, 396 (8th Cir. 2023), *cert. denied*, 144 S. Ct. 1003 (2024) (quoting *Moses v. Dassault Falcon Jet-Wilmington Corp.*, 894 F.3d 911, 923 (8th Cir. 2018)).

A prima facie case for disability discrimination requires an employee to "show that he (1) has a disability within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) suffered an adverse employment action due to his disability." *Mobley v. St. Luke's Health Sys., Inc.*, 53 F.4th 452, 455–56 (8th Cir. 2022) (citations omitted); *Hopman*, 68 F.4th at 402 ("[A]n ADA failure-to-accommodate claim requires proof of a prima facie case of discrimination, which in turn requires proof that the employee suffered an adverse employment decision because of the disability." (citations omitted)). Further, in a failure-to-accommodate case, the plaintiff must ultimately "demonstrate that the employer knew about his disability, . . . that the employee requested an accommodation for his disability," and "that his employer did not make a good faith effort to assist the employee in seeking accommodations." *Mobley*, 53 F.4th at 457 (quotation marks and citations omitted).

For purposes of the Motion to Dismiss, Layton Construction does not challenge that Mr. Christie has a disability or that he was qualified for the position; rather, it asserts that Mr. Christie has not alleged an adverse action. "An adverse employment action is one that causes a material change in the terms or conditions of employment." *Fenney v. Dakota, Minn. & E. R. Co.*, 327 F.3d 707, 716 (8th Cir. 2003) (citation omitted). Mr. Christie argues that Layton Construction's failure to accommodate amounted to constructive discharge—i.e., that "management refus[ing] to allow him to continue to bring[ ] his

4

service dog to work" was "tantamount to forcing Plaintiff to quit." (Doc. 25, p. 4 (citing Doc. 14, ¶¶ 30–37)).

"While it is true that a plaintiff cannot state an adverse employment action if he voluntarily resigned, circumstances that rise to a constructive discharge—that is, one in which an employee had no choice but to quit because of the employer's actions—are . . . considered an adverse employment action." *Fenney*, 327 F.3d at 717. "A plaintiff claiming constructive discharge must show that a reasonable person would have found the conditions of employment intolerable and that the employer either intended to force the employee to resign or could have reasonably foreseen that the employee would do so as a result of its actions." *Id.* "An employee must, however, grant [his] employer a reasonable opportunity to correct the intolerable condition before [he] terminates [his] employment." *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 534 (8th Cir. 2008) (citation omitted).

### 2. Analysis

Mr. Christie fails to state a plausible claim for relief because he does not allege that he was actually prohibited from bringing his service dog to work, so the Court cannot reasonably infer that he was forced to quit or that he was denied a reasonable accommodation.

Mr. Christie cannot make out a prima facie case for disability discrimination because he fails to allege that he suffered an adverse action. Mr. Christie argues that being required to work without Zappa would be intolerable due to the risk of a narcoleptic episode and that Layton Construction could reasonably foresee that prohibiting Mr. Christie from bringing Zappa would force him to resign based on his prior disclosure of

his condition and need of a service dog. But Mr. Christie does not allege that he was prevented from bringing Zappa.

Mr. Christie alleges that on November 16, 2023, Mr. Chavres told him not to bring his dog to work and not to have his dog in the job trailer. (Doc. 14, ¶¶ 30, 31). Then over approximately one month, there were "one or two more interactions with [Mr. Chavres] in which Plaintiff felt like what [Mr. Chavres] said and/or did was inappropriate and/or based on [Mr. Chavres's] dislike of Plaintiff utilizing a Service Dog at work." *Id.* at ¶ 32. In the Court's view, the only reasonable inference made from these allegations is that Mr. Christie continued to bring Zappa to his job; otherwise, Mr. Chavres would have no cause to signal his "dislike of Plaintiff utilizing a Service Dog at work." *Id.* Further, there are no facts alleged from which the Court can infer that the vaguely pled "one or two more interactions" caused Mr. Christie to stop bringing Zappa. Nor does Mr. Christie allege that Mr. Chavres had the authority to revoke the accommodation that had been allowed for months. Mr. Chavres's three to four comments and/or interactions all occurred multiple weeks before Mr. Christie's resignation—with the only clearly alleged instruction not to bring Zappa occurring nearly *two months* before his resignation. There are no facts pled that show why, as of January 8, Mr. Christie was forced to resign.[4]

---

[4] Factually, Mr. Christie cannot rely on the failure to accommodate as the adverse action because he does not allege that he was forced to stop bringing Zappa to work.

Legally, it is not clear whether a failure to accommodate is an adverse action in the Eighth Circuit. Prior to the Eighth Circuit's decision in *Hopman v. Union Pacific Railroad*, 68 F.4th 394, 396 (8th Cir. 2023), the adverse action prong could be met through the failure to accommodate itself. *See, e.g.*, *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1077 n.5 (8th Cir. 2006) (explaining in ADA and Rehabilitation Act case that it omitted "adverse action" in its statement of the elements because "the alleged failure to accommodate is the adverse action" (citation omitted)); *Garrison v. Dolgencorp, LLC*, 939 F.3d 937, 941 (8th Cir. 2019) (similar); *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1060 (8th Cir. 2016)

Despite Mr. Christie's constructive-discharge argument resting on the intolerability of being forced to work without his service dog, the Amended Complaint states that Mr. Christie resigned due to "discriminatory conduct," and the only discriminatory conduct pled is Mr. Chavres's statements/interactions regarding Zappa. The Court finds it implausible that this made Mr. Christie's working conditions objectively intolerable or that the employer could have foreseen that such comments would force him to resign. What's more, Mr. Christie explicitly states that he never notified Layton Construction about Mr.

---

(stating denial of accommodation is adverse action) (citation omitted); *see also Exby-Stolley v. Bd. of Cnty. Comms.*, 979 F.3d 784, 806 (10th Cir. 2020) ("[The Eighth Circuit] classif[ies] a failure to accommodate as an adverse 'action.'" (citations omitted)); 3 Employment Discrimination Law and Litigation § 23:66 (same). Indeed, prior versions of the Eighth Circuit's failure-to-accommodate Model Jury Instructions omitted reference to "adverse action"—like *Mershon* and *Garrison*. *See* 8th Cir. Civ. Jury Instr. § 9.42 (2021).

However, in 2023, the Eighth Circuit noted in *Hopman*: "The model instruction seems to ignore our holdings in many panel decisions . . . that an ADA failure-to-accommodate claim requires proof of a prima facie case of discrimination, which in turn requires proof that the employee suffered an adverse employment decision because of the disability." 68 F.4th at 402 (quotation marks and citations omitted); *id.* (acknowledging the "sharp controversy" amongst circuits on this issue and citing *Exby-Stolley*, 979 F.3d 784). *Hopman* calls into question prior understanding that the Eighth Circuit's adverse action requirement is one of "form, rather than substance." *See Exby-Stolley*, 979 F.3d at 806–07; *id.* at 807 n.13 (noting an Eighth Circuit opinion requiring adverse action "strayed from the path marked by other Eighth Circuit panels addressing ADA failure-to-accommodate claims" and "is unrepresentative of Eighth Circuit failure-to-accommodate cases").

Following the decision in *Hopman*, instruction 9.42 was modified to include: "as a direct result of defendant's failure to provide reasonable accommodation, [specify adverse employment decision in question—e.g., 'plaintiff's employment was terminated' or 'plaintiff was denied a bonus']." 8th Cir. Civ. Jury Instr. § 9.42 (2023). This addition with the slight shift in language—from an adverse action *because of disability*, as stated in *Hopman*, to an adverse action *because of the failure to accommodate*—suggests the drafters read *Hopman* to require a *separate* adverse action. Layton Construction adopts this reading of *Hopman* in its Reply brief. (Doc. 29, p. 2).

The Court does not decide whether *Hopman*'s doubling down on requiring an adverse action is a matter of form or substance because it is not dispositive here—there is no adverse action alleged, neither a failure to accommodate nor a constructive discharge.

7

Chavres's comments, depriving his "employer a reasonable opportunity to correct the intolerable condition before [he] terminate[d] [his] employment." *Anda*, 517 F.3d at 534.

Furthermore, without any allegation from which the Court can reasonably infer that Mr. Christie was prevented from bringing Zappa (e.g., that he stopped bringing her or was threatened with disciplinary action for bringing her), he fails to plead that Layton Construction denied him accommodation. *See Hopman*, 68 F.4th at 396 (explaining a failure-to-accommodate claim requires a showing of both the "prima facie case of discrimination based on disability *and a failure to accommodate it*" (emphasis added)).

Because Mr. Christie has not plausibly pled a failure to accommodate, constructive discharge, or any other adverse action, he fails to state a plausible prima facie case for disability discrimination or a claim for failure to accommodate.

### B. Hostile Work Environment

#### 1. Law

A claim for hostile work environment requires: (1) "that [Mr. Christie] is a member of the class of people protected by the statute," (2) "that he was subjected to unwelcome harassment," (3) "that the harassment resulted from his membership in the protected class," and (4) "that the harassment was severe enough to affect the terms, conditions, or privileges of his employment." *Moses*, 894 F.3d at 921–22 (quotation marks and citations omitted). The issue here is whether Mr. Christie plausibly pled the fourth element.

"In order to be actionable, harassment must be both subjectively hostile or abusive to the victim and severe and pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive." *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 721 (8th Cir. 2003) (quotation marks

and citations omitted). Whether harassment is "severe enough to affect the terms, conditions, or privileges of [one's] employment," is determined by "consider[ing] the totality of the circumstances, including the frequency and severity of the conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with [one's] job performance." *Moses*, 894 F.3d at 922 (quotation marks and citations omitted). Additionally, the harassment must have been "so intimidating, offensive, or hostile that it poisoned the work environment." *Id.* at 923 (quotation marks and citations omitted).

### *2. Analysis*

Mr. Christie alleges that he was "subjected" to "unwelcome comments and/or conduct because of her [sic] disability." (Doc. 14, ¶ 57).[5] The alleged comments and conduct here fail to chin the bar for actionable harassment in the Eighth Circuit. Mr. Christie alleges that Mr. Chavres: (1) mentioned Zappa at a dinner; (2) on November 16, advised that Zappa's presence was unprofessional and instructed Mr. Christie not to bring her to work anymore; (3) that same day, made a comment that Zappa could not be in the job trailer; and (4) engaged in "one or two more interactions" that made Mr. Christie "fe[el] like" Mr. Chavres "dislike[d] Plaintiff utilizing a Service Dog at work." (Doc. 14, ¶¶ 27–32). These statements are not so severe as to have "create[d] an objectively hostile or abusive work environment" and certainly not so severe as to have "poisoned the work environment." *Moses*, 894 F.3d at 922–23; *see, e.g.*, *Shaver*, 350 F.3d at 721 (affirming

---

[5] Mr. Christie argues in his briefing that being denied the reasonable accommodation constitutes actionable harassment. (Doc. 25, p. 7). Not only does this argument collapse these two theories of discrimination into one, but it also fails because Mr. Christie does not allege that he was actually denied a reasonable accommodation. *See supra* section III(A)(2); *see also Moses*, 894 F.3d at 920 ("Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct.").

dismissal on summary judgment on a finding that co-workers and supervisors calling the plaintiff "platehead"—due to his brain surgery for epilepsy—and making other comments about him being "stupid" over a two-year period did not create an objectively hostile or abusive work environment); *Rensink v. Wells Dairy, Inc.*, 741 F. Supp. 2d 1038, 1061 (N.D. Iowa 2010) (dismissing "hostile work environment" claim where plaintiff alleged being called "stupid" and "r*tard"); *c.f. E.E.O.C. v. CRST Van Expedited, Inc.*, 679 F.3d 657, 687 (8th Cir. 2012) (concluding that coworkers' "poor personal hygiene, boasting about past sexual exploits, sporadic remarks of sexual vulgarity, and highly offensive but isolated instances of propositioning for sex" were not sufficiently severe or pervasive as a matter of law for the Title VII claim to survive summary judgment).

Thus, Mr. Christie has failed to plausibly plead a claim for hostile work environment, and this claim should be dismissed.

### C. Motion for Leave to Amend

Mr. Christie seeks leave of the Court to file a second amended complaint (Doc. 26-1). Mr. Christie has already amended his pleading once as a matter of course under Federal Rule of Civil Procedure 15(a)(1), and Layton Construction opposes Mr. Christie's Motion for Leave. Any further amendment, therefore, requires the Court's leave which should be freely given when justice so requires under Rule 15(a)(2). A district court may deny leave to amend under Rule 15(a)(2) when there are "compelling reasons such as . . . futility of the amendment." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008) (quotations marks and citations omitted).

The proposed amendment clarifies that Mr. Christie can have multiple narcoleptic episodes in a day, that he has utilized a service dog for ten years, that his dog alerts him

when he is going to fall asleep so he can take certain actions to stay awake, that the dog enables him to work full workdays without fear of suffering a narcoleptic episode, and that Mr. Chavres was his direct supervisor. While these additional allegations answer several questions the Court had in its review of the operative Complaint, it still does not allege any facts from which the Court can reasonably infer that Layton Construction prohibited Mr. Christie from bringing his service dog.[6]

Mr. Christie has now filed an EEOC charge, an amended EEOC charge, a complaint, an Amended Complaint, and a proposed second amended complaint—none of which provide sufficient facts to infer a failure to accommodate, constructive discharge, or hostile work environment. While the Court finds the proposed amendment here would be futile, it believes Mr. Christie may be able to cure the noted deficiencies, so leave to amend is **DENIED**, but the Court will allow Mr. Christie **ten (10) days** to move for leave to amend with a proposed second amended complaint attached.

## IV. CONCLUSION

For the reasons stated herein, Layton Construction's Motion to Dismiss is **GRANTED**. Mr. Christie's Motion for Leave to Amend is **DENIED**. The case is **DISMISSED WITHOUT PREJUDICE**. Should Mr. Christie wish to move for leave to amend again, he must file such motion on or before **July 10, 2025**. Otherwise, the Court will enter judgment closing the case.

**IT IS SO ORDERED** on this 30th day of June, 2025.

---

[6] It should be noted that Mr. Christie did not add any facts on this issue despite Layton Construction arguing that, per Mr. Christie's own allegations, it appeared he continued to bring Zappa to work. *See* Doc. 18, pp. 2–5.

11

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE