## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

JAMES CHRISTIE                                                              PLAINTIFF

V.                                          CASE NO. 5:24-CV-5201

LAYTON CONSTRUCTION CO., LLC                                    DEFENDANT

### MEMORANDUM OPINION AND ORDER

Presently before the Court is Defendant Layton Construction, Co., LLC's Motion to Dismiss Plaintiff's Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) (Doc. 39). The Court has reviewed all pertinent briefing and exhibits, as well as the operative Complaint (Doc. 37). Mr. Christie alleges that Layton Construction failed to accommodate his disability and created a hostile work environment in violation of the Americans with Disabilities Act ("ACRA"), 42 U.S.C. § 12101, *et seq.* ("ADA") and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-107, *et seq.* The Court finds that Plaintiff's Second Amended Complaint pleads facts adequate to support an ADA failure to accommodate claim, and the Motion to Dismiss is thus **DENIED** as to Plaintiff's Failure to Accommodate claims (Counts I and III); but fails to state a claim for hostile work environment, and thus is **GRANTED** as to Plaintiff's Hostile Work Environment claims (Counts II and IV).

### I.  ALLEGED FACTS

Mr. Christie has worked in construction for thirty years. (Doc. 37, ¶ 14). He has a disability known as narcolepsy, which affects his brain's ability to control sleep-wake cycles, causing excessive daytime sleepiness and sudden, uncontrollable episodes of sleep intruding into wakefulness. *Id.* at ¶ 17–18. He uses a service dog, Zappa, to alert him of

1

narcoleptic episodes. *Id*. at ¶ 25.  In June 2023, Mr. Christie interviewed for a position with the Vice President of Layton Construction and several managers, and he was hired as a Senior Superintendent. *Id*. at ¶¶ 37, 38, 42. Zappa was present throughout the meeting, and Mr. Christie told those he was interviewing with that he had narcolepsy and used a service dog. *Id*. at ¶¶ 39, 40.

Two months later, Mr. Christie started on a construction project in Fort Smith.[1] (*Id*. at ¶ 43).  His duties as a Senior Superintendent included, among other tasks, driving to and from the jobsite and to various locations on the jobsite; working in close proximity with machinery and heavy equipment; and working in proximity to heavy construction activity. *Id*. at ¶¶ 23, 40.

On November 15, 2023, Mr. Christie was at a company dinner where Kevin Charves was present.  *Id*. at ¶ 50.  At the dinner, Mr. Charves "derisively questioned Plaintiff's need for a Service Dog at work."  *Id*. at ¶ 53.  The following day, on November 16, 2023, during the course of a performance review, Mr. Charves "told Plaintiff that it was unprofessional and unnecessary for Plaintiff to have a dog at work" and "specifically instructed Plaintiff to never again bring his Service Dog to the job site."  *Id*. at ¶¶ 58–59. That same day, Mr. Charves made a second comment to Mr. Christie that "he could not have Zappa with him in the job trailer." *Id*. at ¶ 62.  Over the next month or so, Mr. Christie had "one or two more interactions" with Mr. Charves in which Mr. Christie "felt like what [Mr. Charves] said and/or did was inappropriate and/or based on [Mr. Charves's] dislike of

_____

[1] According to the Complaint, the project manager in Fort Smith, Mr. Wallace, also used a service dog.
*Id.* at ¶¶ 46–47

Plaintiff utilizing a Service Dog at work." *Id.* at ¶ 32.

Although not alleged in Plaintiff's First Amended Complaint, Mr. Christie now also alleges that he, at some point, began complying with Mr. Charves's directive and "stopped bringing his Service Dog to work." *Id.* at ¶ 68.  Following this, Mr. Christie made multiple requests to Mr. Charves for reasonable accommodation for his disability, which were denied. *Id.* at ¶¶ 70, 72.  Mr. Christie further claims that although he did not report Mr. Charves's conduct to Human Resources out of fear of retaliation, *id.* at ¶¶ 65–67, he did report Mr. Charves's comments and Mr. Charves's order to not bring Zappa to work to Mr. Brecker and/or Mr. Wallace, both of whom allegedly had supervisory authority over Mr. Charves.  *Id.* at ¶ 77.

Zappa's absence impeded Mr. Christie's ability to perform his job duties, and although he initially attempted to manage his narcolepsy, he became "increasingly frustrated by the detrimental impact of his disability at work and increasingly aware of the corresponding safety risks." *Id.* at ¶ 84–87.  On or around January 8, 2024, Mr. Christie resigned from Layton Construction. *Id.* at ¶ 36.

## II.  LEGAL STANDARD

To survive dismissal under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  In ruling, the Court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) (quotation marks omitted).  However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A claim is facially plausible—rather than sheerly possible—when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372 (8th Cir. 2016) (citation modified).

## III. DISCUSSION

### A. Disability Discrimination/Failure to Accommodate

#### 1. Law

"The ADA bars private employers from discriminating against a 'qualified individual on the basis of disability.' Discrimination is defined to include 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified [employee] with a disability.'" *Faidley v. United Parcel Serv., Inc.*, 889 F.3d 933, 940 (8th Cir. 2018) (en banc) (quoting 42 U.S.C. § 12112(a), (b)(5)(A)). In failure-to-accommodate cases under the ADA, a plaintiff must ultimately "establish both a prima facie case of discrimination based on disability and a failure to accommodate it." *Hopman v. Union Pac. R.R.*, 68 F.4th 394, 396 (8th Cir. 2023), *cert. denied*, 144 S. Ct. 1003 (2024) (quoting *Moses v. Dassault Falcon Jet-Wilmington Corp.*, 894 F.3d 911, 923 (8th Cir. 2018)).

A prima facie case for disability discrimination requires an employee to "show that he (1) has a disability within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) suffered an adverse employment action due to his disability." *Mobley v. St. Luke's Health Sys., Inc.*, 53 F.4th 452, 455–56 (8th Cir. 2022) (citations omitted); *Hopman*, 68 F.4th at 402 ("[A]n ADA failure-to-accommodate claim requires proof of a prima facie case of discrimination, which in turn requires proof that the employee suffered

an adverse employment decision because of the disability." (citations omitted)).  Further, in a failure-to-accommodate case, the plaintiff must ultimately "demonstrate that the employer knew about his disability, . . . that the employee requested an accommodation for his disability," and "that his employer did not make a good faith effort to assist the employee in seeking accommodations." *Mobley*, 53 F.4th at 457 (citation modified).

For purposes of the Motion to Dismiss, Layton Construction does not challenge that Mr. Christie has a disability or that he was qualified for the position; rather, it asserts that Mr. Christie has not alleged an adverse employment action.  To plead an adverse employment action, a plaintiff "is only required to plead 'some harm respecting an identifiable term or condition of employment.'"  *Palmer ex rel. v. Union Pac. R.R. Co.*, 139 F.4th 970 (8th Cir. 2025) (quoting *Cole v. Grp. Health Plan, Inc.*, 105 F.4th 1110, 1114 (8th Cir. 2024); *Muldrow v. City of St. Louis*, 601 U.S. 345, 355 (2024) (same).  Mr. Christie, in turn, argues that Layton Construction's failure to accommodate his disability amounted to constructive discharge, or alternatively, that Layton Construction's failure to accommodate is itself an adverse employment action.[2]

---

[2] As the Court noted in its prior order, it is not clear whether an employer's failure to accommodate an employee's disability may serve to satisfy the adverse action prong under Eighth Circuit law. (Doc. 34 at p. 6, n.4).  Prior to the Eight Circuit's decision in *Hopman v. Union Pacific Railroad*, 68 F.4th 394, 396 (8th Cir. 2023), the adverse-employment action requirement was a matter of form rather than substance, as an employer's failure to accommodate was itself an adverse action.  *See, e.g., Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1077 n.5 (8th Cir. 2006) (explaining in ADA and Rehabilitation Act case that it omitted "adverse action" in its statement of the elements because "the alleged failure to accommodate is the adverse action" (citation omitted)); *Garrison v. Dolgencorp, LLC*, 939 F.3d 937, 941 (8th Cir. 2019) (similar); *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1060 (8th Cir. 2016) (stating denial of accommodation is adverse action) (citation omitted); *see also Exby- Stolley v. Bd. of Cnty. Comms.*, 979 F.3d 784, 806 (10th Cir. 2020).  *Hopman*, in dicta, found that a prior version of an Eighth Circuit Model Civil Jury Instruction "seem[ed] to ignore our holdings in many panel decisions. . . that an ADA failure-to-accommodate claim requires proof of a prima facie case of

"While it is true that a plaintiff cannot state an adverse employment action if he voluntarily resigned, circumstances that rise to a constructive discharge—that is, one in which an employee had no choice but to quit because of the employer's actions— are . . . considered an adverse employment action." *Fenney*, 327 F.3d at 717. "A plaintiff claiming constructive discharge must show that a reasonable person would have found the conditions of employment intolerable and that the employer either intended to force the employee to resign or could have reasonably foreseen that the employee would do so as a result of its actions." *Id.* "An employee must, however, grant [his] employer a reasonable opportunity to correct the intolerable condition before [he] terminates [his] employment." *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 534 (8th Cir. 2008) (citation omitted).

---

discrimination, which in turn requires proof that the employee 'suffered an adverse employment decision because of the disability.'" 68 F.4th at 402 (citing Moses, 894 F.3d at 923)..

Recent Eighth Circuit precedent, however, suggests that a cause of action for an employer's failure to accommodate an employee's disability may survive *Hopman*. In *Palmer*, the Court held that *Muldrow* abrogated the existing Eighth Circuit requirement that an adverse employment action "*materially* affect the terms of conditions of employment," instead requiring that adverse employment action need only cause "some harm respecting an identifiable term or condition of employment." *Palmer*, 139 F.4th 970, 973 (8th Cir. 2025). And in *Cole v. Group Health Plan, Inc.*, 105 F.4th 1110, 1114, which postdates *Hopman*, the Court held in the Title VII context that the "denial of a requested religious accommodation absent a showing of undue hardship may itself constitute an adverse action" Courts often look to Title VII in construing similar provisions of the ADA. *See, e.g.*, *Burchett v. Target Corp.*, 340 F.3d 510, 518 (8th Cir. 2003) (citing *Moisant v. Air Midwest, Inc.*, 291 F.3d 1028, 1031 (8th Cir. 2002), a Title VII case, for purposes of construing the adverse employment action prong in a disability discrimination case. But because the Court finds that Mr. Christie's pleadings are sufficient to proceed on a constructive discharge claim, whether an employer's failure to accommodate may itself serve as an adverse action is not dispositive, and so the Court does not reach a conclusion on the issue in this order.

### 2. *Analysis*

Mr. Christie has pled sufficient facts to support his cause of action for disability discrimination. The Court previously dismissed Mr. Christie's complaint, as he failed to allege that (1) he was prohibited from bringing his service dog to work and complied with that prohibition; and that (2) he notified Layton Construction about Mr. Charves's comments or Mr. Charves's instruction that he not bring his service dog with him to work. *See* Doc. 34 at pp. 6–8. The Second Amended Complaint cures these defects.

Mr. Christie now claims that he in fact "stopped bringing" his service dog to work in order to comply with Mr. Charves's instructions. *See* Doc. 37 at ¶¶ 68, 77. Layton Construction counters that these allegations are "contrary to the reasonable inferences from [Plaintiff's] earlier pleadings" and should be discounted as such. *See* Doc. 40 at p. 8, n.4. Still, although not contained in Mr. Christie's prior pleadings, the new allegations are neither inconsistent with the earlier versions of Mr. Christie's complaint nor with his EEOC filings, all of which were merely silent on the issue of whether Mr. Christie continued to bring his service dog with him to the job site. *See generally* Docs. 2, 14, 37-1, 37-2. Taken as true, the Second Amended Complaint thus makes out a plausible case that Mr. Christie was prevented from brining Zappa to work, and therefore that Layton Construction failed to accommodate his disability under the ADA. *See Hopman*, 68 F.4th at 396 (to prevail on a failure-to-accommodate claim under the ADA, a Plaintiff "must establish both a prima facie case of discrimination based on disability *and* a failure to accommodate it" (emphasis added) (citation omitted)). The remaining question is whether Mr. Christie has pled sufficient facts to support a prima facie case of disability, specifically under the adverse employment action requirement.

Mr. Christie's Second Amended Complaint alleges that Mr. Charves made inappropriate comments about Zappa's presence alongside him at work, that Mr. Charves directed him not to bring Zappa to work anymore, and that Mr. Christie reported these facts to Mr. Brecker and/or Mr. Wallace. *See* Doc. 37 at ¶ 77. Again, Layton Construction argues that these allegations are facially contradicted by both Mr. Christie's Charge of Discrimination (Doc. 37-1) and his Amended Charge of Discrimination (Doc. 37). *See* Doc. 40 at p. 8. Mr. Christie, on the other hand, claims that this incongruity can be reconciled, as what he meant (but did not state) in his EEOC charge was that while he did not formally complain of Mr. Charves' conduct to Human Resources, he did report the conduct to Mr. Wallace and Mr. Brecker. While Mr. Christie's new allegations are certainly convenient, a "report" may mean different things to different people, and Mr. Christie's explanation is not so outlandish as to render the allegation entirely implausible. Skeptical as the Court may be, the new allegations do not rise to the level of the contradictions that courts discounted in Layton Construction's cited authorities—*e.g.,* facts that contradict video evidence, a change in the date an employee was discharged, or a sudden change in a patient's stated medical condition. *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013); *Hollman v. Huntington Ingalls Inc.*, 499 F. Supp. 3d 269, 278 (E.D. Va. 2020); *Elkharwily v. Mayo Holding Co.*, 955 F. Supp. 2d 988, 966 (D. Minn. 2013). An evaluation of the factual underpinnings of Mr. Christie's complaint is inappropriate at the motion to dismiss stage, where the Court must accept as true all factual pleadings in the complaint and grant all reasonable interferences in the plaintiff's favor. *Gallagher*, 699 F.3d a 1016. The Court thus declines Layton Construction's invitation to make such a credibility determination at this stage—discovery may very well reveal, whether through deposition

or contemporaneous documentary evidence, that Mr. Christie did in fact report his claims to Mr. Wallace and/or Mr. Brecker as he states in the Second Amended Complaint.

Mr. Christie has thus made out a prima facie case for disability discrimination. Neither party disputes that Mr. Christie has a disability within the meaning of the ADA or that he is a qualified individual under the ADA. With Mr. Christie's additional allegations accepted as true, he has also successfully met the adverse employment action prong under a constructive discharge theory. Zappa's unavailability posed a "serious safety risk for [Mr. Christie]" as it "seriously impeded [his] ability to stay awake and alert to safely perform his job duties around machinery, equipment, and materials used on the jobsite." *See* Doc. 37 at ¶¶ 83, 85. A reasonable person might very well find that the risks to Mr. Christie's safety rendered the conditions of his employment intolerable such that they required his resignation, even under an objective standard. *Fenney*, 327 F.3d at 717. As Mr. Christie alleges that Layton Construction was aware of the existence and severity of Mr. Christie's disability through his interview, it was reasonably foreseeable that Mr. Christie would resign as a result of Mr. Charves denying him an accommodation. *Id.* Finally, because the Court is inclined to accept as true, at this stage, Mr. Christie's allegation that he reported Mr. Charves's comments and accommodation denial to Mr. Wallace and Mr. Brecker, Mr. Christie has also satisfied *Anda*'s requirement that he grant his employer "a reasonable opportunity to correct the intolerable condition before [he] terminates [his] employment," as Layton Construction was allegedly on notice of Mr. Charves's conduct prior to Mr. Christie's resignation. 517 F.3d at 534.

9

Mr. Christie has plausibly pled a failure to accommodate under a theory of constructive discharge. Layton Construction's Motion to Dismiss as to Counts I and III of the Second Amended Complaint is therefore **DENIED**.

## B. Hostile Work Environment

### 1. Law

A claim for hostile work environment under either the ADA or the ACRA requires: (1) "that [Mr. Christie] is a member of the class of people protected by the statute," (2) "that he was subjected to unwelcome harassment," (3) "that the harassment resulted from his membership in the protected class," and (4) "that the harassment was severe enough to affect the terms, conditions, or privileges of his employment." *Moses*, 894 F.3d at 921–22 (citation modified). The issue here is whether Mr. Christie plausibly pled the fourth element. "In order to be actionable, harassment must be both subjectively hostile or abusive to the victim and severe and pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive." *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 721 (8th Cir. 2003) (citation modified); *see also Island v. Buena Vista Resort*, 352 Ark. 548, 556 (Arkansas courts "look to federal decisions for persuasive authority when considering claims under the Arkansas Civil Rights Act."). Whether harassment is "severe enough to affect the terms, conditions, or privileges of [one's] employment," is determined by "consider[ing] the totality of the circumstances, including the frequency and severity of the conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with [one's] job performance." *Moses*, 894 F.3d at 922 (citation modified). Additionally, the harassment

10

must have been "so intimidating, offensive, or hostile that it poisoned the work environment." *Id.* at 923 (quotation marks and citations omitted).

### 2. Analysis

As in Mr. Christie's prior pleadings, he alleges that he was "subjected to a continuously hostile work environment" while at Layton Construction, which "took the form of belittling comments" about Zappa, "defamatory remarks that [Mr. Christie] was unprofessional for requiring [Zappa] at work" and Mr. Charves's refusal to accommodate his disability. *See* Doc. 37 at ¶¶ 111, 113. As Layton Construction notes, however, Mr. Christie's allegations do not differ in kind or degree from those stated in his original complaint. These allegations include derogatory comments by Mr. Charves while at a dinner, (Doc. 37 at ¶ 50–55), and comments during a performance review, *id.* at 58, 60. Neither are sufficiently severe for Mr. Christie to prevail on his hostile work environment claim. As explained in the Court's prior order, the Eighth Circuit generally requires statements so severe as to have "created an objectively hostile or abusive work environment" or such that they "poison[ ] the work environment." *Moses*, 894 F.3d at 922–23; *see, e.g., Shaver*, 350 F.3d at 721 (affirming dismissal on summary judgment on a finding that co-workers and supervisors calling the plaintiff "platehead"—due to his brain surgery for epilepsy—and making other comments about him being "stupid" over a two-year period did not create an objectively hostile or abusive work environment); *Rensink v. Wells Dairy, Inc.*, 741 F. Supp. 2d 1038, 1061 (N.D. Iowa 2010) (dismissing "hostile work environment" claim where plaintiff alleged being called "stupid" and "r*tard"); *c.f. E.E.O.C. v. CRST Van Expedited, Inc.*, 679 F.3d 657, 687 (8th Cir. 2012) (concluding that coworkers' "poor personal hygiene, boasting about past sexual exploits, sporadic remarks

11

of sexual vulgarity, and highly offensive but isolated instances of propositioning for sex"
were not sufficiently severe or pervasive as a matter of law for the Title VII claim to survive
summary judgment).

Mr. Christie's attempts to transform his failure to accommodate claim into a hostile
work environment claim are similarly unavailing. *See* Doc. 44 at pp. 11–12. This argument
collapses two theories of discrimination into one, and fails to establish the repeated
pattern or practice required for a hostile environment claim. *See also* Doc. 34 at 9, n.5.
Although Mr. Christie's repeated compliance with Mr. Charves's directive that he not bring
Zappa to work is taken as true for his failure-to-accommodate claim, that conduct cannot
be imputed to Mr. Charves, nor is it the sort of physical harassment or threat of violence
that courts have recognized as actionable as a hostile work environment claim. *See, e.g.,*
*Shaver*, 350 F.3d at 722.

Mr. Christie has thus failed to plausibly plead a claim for hostile work environment,
and Counts II and IV of the Second Amended Complaint should be dismissed.

## IV. CONCLUSION

For the reasons stated herein, Layton Construction's Motion to Dismiss (Doc. 39) is
**GRANTED IN PART** and **DENIED IN PART.** Counts II and IV are **DISMISSED WITHOUT**
**PREJUDICE** for failure to state a claim.

IT IS SO ORDERED on this 14th day of ~~September~~ October 2025.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE